United States District Court
District of Massachusetts

|   |   |   |
|---|---|---|
| DONOVAN WALKER and NANCY WALKER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | 12-10267-NMG |
| | ) | |
| DWAIN JACKSON et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM & ORDER

**GORTON, J.**

This case arises from an allegation of police misconduct during a response to a 911 call. Plaintiffs Donovan Walker ("Mr. Walker") and Nancy Walker ("Mrs. Walker") allege that officers of the Boston Police Department ("BPD") conducted an illegal search of their residence and used excessive force against Mr. Walker in violation of 42 U.S.C. § 1983. The two remaining defendants, Sergeant Timothy Horan ("Sgt. Horan") and Officer Dwain Jackson ("Officer Jackson"), have both filed motions for summary judgment.

For the reasons that follow, the motions for summary judgment will be allowed, in part, and denied, in part.

I. **Background**

In February, 2011, the BPD received several 911 calls from a man who claimed that there was a dead body and an armed man at

4 Burton Avenue in Roxbury, Massachusetts. The State Police dispatcher notified the BPD dispatcher that this was the caller's fifth 911 call. When the BPD dispatcher asked for a description of the gunman, the caller responded that there were "20 people all in black" who had guns and intended to kill someone.

The dispatchers traced the calls to Sylvester McDuffie at 4 Burton Street in Brighton, Massachusetts, who the BPD knew had made prior false 911 calls. Officers were dispatched to both the Brighton and Roxbury addresses but they found nothing of concern.

The group of officers sent to the Roxbury address surrounded the house at approximately 6:25 AM. Plaintiffs resided on the first floor in a two-bedroom apartment of the multifamily structure at that address. After opening the exterior door to the porch and learning the reason for the police presence, Mr. Walker informed the officers that there were no dead bodies or armed persons in his apartment. The officers indicated that they nevertheless had to conduct a search. At Mr. Walker's request, they agreed to limit the search to two officers and Mrs. Walker accompanied Officers McCormack and McNeill through the apartment. The two officers found neither a body nor an armed intruder.

In the meantime, Mr. Walker blocked the entry to the interior door of the apartment. Plaintiffs allege that after Officers McCormack and McNeill had completed their search and relayed their findings to the other officers, Officer Jackson attempted to enter the apartment. He allegedly told the plaintiffs that they could not stop him from entering the apartment and thrust his forearm into Mr. Walker's chest, pushing him backward into a wall. Officer Jackson then allegedly threw Mr. Walker to the floor, causing him to land on a bicycle and injure his back.

As Officer Jackson stepped into the apartment, he allegedly kicked Mr. Walker in the side of the head. Several of the remaining officers waiting outside then joined Officers Jackson, McCormack and McNeill in the apartment and allegedly proceeded to search the spaces already searched.

While lying on the ground, Mr. Walker screamed that he was paralyzed and unable to move his legs and yelled for the officers to leave immediately. Mrs. Walker attempted to help her husband but Sgt. Horan ordered her to stay back and wait for the ambulance to arrive. An ambulance transported Mr. Walker to the hospital at approximately 7:30 AM.

Later that day, Sgt. Horan returned to the plaintiffs' residence with his supervisor and admitted that Officer Jackson had acted inappropriately. Two days later, Sylvester McDuffie

-3-

was arrested for making false 911 calls and disturbing the peace.

## II. Procedural History

Plaintiffs initiated this suit in February, 2012. They filed a first amended complaint several days later, a second amended complaint in June, 2012 and a third amended complaint in November, 2012. The nine defendant police officers subsequently filed eight motions to dismiss.

In July, 2013, United States District Judge Joseph Tauro allowed, in part, and denied, in part, the eight motions to dismiss. Thereafter, each of the nine defendants filed an answer to the third amended complaint.

The case was transferred to this Session in May, 2014. In August, 2014, the parties filed a joint stipulation of dismissal as to seven of the defendants, leaving Sgt. Horan and Officer Jackson as the two remaining defendants.

In September, 2014, defendant Sgt. Horan filed a motion for summary judgment and Officer Jackson filed a motion for partial summary judgment.

## III. Motion for Summary Judgment

### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Motion for partial summary judgment by Officer Jackson**

Officer Jackson filed a motion for summary judgment to dismiss four of the seven counts asserted against him. He has not opposed the claims for 1) excessive force in violation of 42 U.S.C. § 1983 (Count III), 2) assault and battery (Count VII) or 3) emotional distress (Count XI).

**1. Unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Count I)**

The Fourth Amendment of the United States Constitution generally requires that police officers obtain a search warrant supported by probable cause in order to enter and search a private residence. See United States v. Paneto, 661 F.3d 709, 713 (1st Cir. 2011). However, the United States Supreme Court has carved out an emergency aid exception to the warrant requirement, which allows officers to enter a residence without a warrant if there is "an objectively reasonable basis for believing" that an emergency exists. Brigham City, Utah v. Stuart, 547 U.S. 398, 406 (2006). Searches performed pursuant to the emergency aid exception are called protective sweeps. Com. v. Peters, 453 Mass. 818, 823 (2009).

As an initial matter, the Court concludes that the warrantless search of the apartment by Officers McCormack and McNeill was conducted pursuant to the emergency aid exception. Even though the officers compromised with Mr. Walker and agreed

to limit the search to two officers, there was still an objectively reasonable basis for conducting a protective sweep in light of the emergency 911 calls alleging that there was a gunman and a dead body on the premises. Despite plaintiffs' contention that the dispatchers and officers were dubious of the allegations made in the calls, it was still their duty to take the calls seriously and to respond to the emergency situation accordingly.

The parties dispute whether the search conducted by Officer Jackson should, however, be characterized as a second search. Plaintiffs allege that Officer Jackson conducted an illegal second search after pushing Mr. Walker down and entering the apartment because he already knew that the residence had been cleared by the first two officers. See id. at 824 (suppressing evidence seized as part of a second warrantless search because the officers no longer had an objectively reasonable basis to believe that emergency aid was still required after an initial protective sweep yielded nothing). Plaintiffs support their claim by referring to Officer McCormack's testimony stating that he "relayed back" to the other officers that the house was clear.

Officer Jackson, on the other hand, contends that he believed that only one officer had entered the apartment to conduct the protective sweep and that the initial lawful

warrantless search was still ongoing when he entered the apartment. He asserts that he only found out that the space was cleared after talking to Officer McCormack once he was inside the apartment.

The Court acknowledges that there is a discrepancy in the factual record with respect to this issue because plaintiffs do not dispute defendants' allegation that Mrs. Walker saw Officer Jackson enter the apartment while she and the two officers were in the process of clearing the bathroom. That chronology suggests that Officers McCormack and McNeill had not yet relayed back to the other officers that the house had been cleared.

Nevertheless, there is a genuine dispute as to the timing of events. Summary judgment with respect to Count I will therefore be denied because a reasonable juror could find that there was no longer an objectively reasonable basis for believing that an emergency situation existed to justify Officer Jackson's access to and warrantless search of the plaintiffs' apartment.

### i. Qualified immunity

The genuine issue of material fact leads the Court to deny Officer Jackson's contention that he is entitled to qualified immunity with respect to plaintiffs' unreasonable search claim.

The doctrine of qualified immunity protects government officials performing discretionary functions

> from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an official violated clearly established rights of which a reasonable person would have known, courts consider whether 1) the plaintiff's allegations, if true, establish a constitutional violation, 2) the constitutional right at issue was clearly established at the time of the alleged violations and 3) a reasonable officer situated similarly would have understood the challenged act or omission to contravene the discerned constitutional right. Cox v. Hainey, 391 F.3d 25, 29-30 (1st Cir. 2004).

It is well established that warrantless searches inside a residence are presumptively unreasonable unless an exception applies. Brigham City, 547 U.S. at 403. The conduct alleged by plaintiffs violates clearly established rights and an objectively reasonable officer would have understood that. Moreover, there is a genuine issue of material fact as to whether Officer Jackson entered the apartment knowing that his fellow officers had already determined that no emergency

existed. The Court therefore finds no qualified immunity for Officer Jackson as to this claim.

### 2. Violation of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12 § 11I (Count VI)

To recover under the MCRA, a plaintiff must prove that 1) his civil rights were violated and 2) those rights were interfered with by threats, intimidation or coercion. Layne v. Superintendent, Massachusetts Correctional Institution, 406 Mass. 156, 158 (1989). A direct violation of a person's rights without threats, intimidation or coercion would not implicate the MCRA. Gallagher v. Commonwealth of Massachusetts, 2002 WL 924243, at *3 (D. Mass. Mar. 11, 2002). Furthermore, the use of force is not, in itself, coercive under the MCRA unless the force is inflicted to achieve "some further purpose." Id. (citation omitted).

Plaintiffs contend that their right to be free of unlawful searches was violated and that the physical force used by Officer Jackson to enter the premises was coercive because it was intended to force Mr. Walker to let a third officer into his apartment. They emphasize that the agreement to limit the search to two officers converted the officers' entry from one of exigency to limited consent. The Court disagrees that such an agreement eliminated the emergency nature of the situation.

Summary judgment as to Count VI will nevertheless be denied because 1) there is a genuine issue of material fact regarding whether Officer Jackson's search was lawful and 2) a reasonable juror could find that his use of force was intended to coerce Mr. Walker into allowing him to perform an unconstitutional second search.

### 3. Civil trespass (Count VIII)

To establish a claim for civil trespass, a plaintiff must prove 1) actual possession of the property and 2) that the defendant's entry was intentional and 3) illegal. New England Box Co. v. C & R Const. Co., 313 Mass. 696, 707 (1943). The parties do not dispute that the plaintiffs have actual possession of their apartment or that Officer Jackson's entry was intentional. With respect to the third prong, the Court has already concluded that there is a genuine dispute as to whether Officer Jackson's entry into plaintiffs' apartment was illegal or permissible under the emergency aid exception to the warrant requirement. Consequently, summary judgment will be denied with respect to Count VIII as asserted against Officer Jackson.

### 4. Invasion of privacy (Count X)

Massachusetts recognizes four kinds of conduct that give rise to a claim for invasion of privacy: 1) appropriation of the plaintiff's name or likeness, 2) unreasonable intrusion upon the plaintiff's seclusion of another, 3) public disclosure of

private facts and 4) publicity that places the plaintiff in a false light in the public eye. Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, n. 16 (2005).

This Court assumes that plaintiffs are asserting a violation of their seclusion. However, they have failed to cite any case law that indicates that Officer Jackson's conduct provides an actionable basis for an invasion of privacy claim. Rather, Courts have refused to apply the invasion of privacy statute to police officers' alleged violation of the "knock and announce rule" and subsequent illegal search of a residence. See, e.g., Lucas v. City of Boston, 2009 WL 1844288, at *27 (D. Mass. June 19, 2009) (concluding that "the Supreme Judicial Court of Massachusetts would be unlikely to interpret the statute to provide a distinct cause of action that is entirely duplicative of a civil rights action already available under MCRA").

Accordingly, Officer Jackson's motion for summary judgment with respect to Count X will be allowed.

**C. Motion for summary judgment by Sgt. Horan**

Sgt. Horan, the official responsible for supervising the police officers at the plaintiffs' residence, moves for summary judgment on all four remaining claims against him.

### 1. Aiding and abetting excessive use of force (Count IV)

Plaintiffs contend that Sgt. Horan aided and abetted the use of excessive force against Mr. Walker through his failure to intervene during Officer Jackson's alleged attack.

The First Circuit has stated that

> [a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.

Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, n.3 (1st Cir. 1990). A non-participating defendant can only be found liable pursuant to 42 U.S.C. § 1983 if he 1) was present when excessive force was used, 2) observed the use of excessive force, 3) was in a position to realistically prevent that force and 4) had sufficient time to do so. Id. at 102.

Sgt. Horan asserts that he was not in a position, nor was there sufficient time, to prevent the alleged use of force by Officer Jackson. The Court agrees. It is undisputed that Sgt. Horan was standing behind four other officers on the front porch when the alleged altercation occurred. The front porch is approximately six feet from the plaintiffs' interior apartment door. It is also undisputed that the use of force, including the alleged elbowing, pushing and kicking of Mr. Walker's head, occurred without warning and lasted a matter of seconds. Mr.

Walker testified that after noticing Officer Jackson ball up his fist, "the next thing I know, I was taking one in the chest from his elbow." That suggests that the series of events occurred very rapidly. The factual record indicates that Sgt. Horan did not, therefore, have time to prevent Officer Jackson from allegedly elbowing and kicking Mr. Walker because he could not have anticipated the use of force. See O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (concluding that three blows struck in rapid succession by one police officer was not of sufficient duration to impose duty to intervene on another officer who stood by).

Plaintiffs contend that the verbal dispute should have put Sgt. Horan on notice that the argument would lead to a use of physical force. The facts alleged do not, however, suggest that Officer Jackson gave any warning or threat of an imminent use of force. The verbal dispute alone would not have led Sgt. Horan to anticipate the quick succession of events that followed.

Furthermore, aiding and abetting liability requires proof that a defendant "associated himself with the venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." Wilson v. Town of Mendon, 294 F.3d 1, 15 (1st Cir. 2002). Mere presence does not establish a joint venture. The facts alleged in this case do

not suggest that Sgt. Horan "wished" for Mr. Walker to be pushed or kicked.

Accordingly, Sgt. Horan's motion for summary judgment with respect to Count IV of the plaintiffs' third amended complaint will be allowed.

### 2. Supervisory liability (Count V)

While supervisors cannot be held liable under § 1983 for the constitutional violations of their subordinates based on a theory of respondeat superior, they may be held liable for their own actions or inactions. Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999).

A supervisory officer may be held liable for the behavior of his subordinate officers if

> 1) the behavior of [his] subordinates results in a constitutional violation and 2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.

Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. University of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (internal citations and quotation marks omitted).

Plaintiffs contend that Sgt. Horan is liable under supervisory liability for both the use of excessive force and the illegal second search of the home by Officer Jackson. The Court rejects the first basis for the claim of supervisory

liability because it has already been determined that Sgt. Horan was not in a position to prevent the physical altercation between Officer Jackson and Mr. Walker.  Furthermore, once Sgt. Horan entered the home and learned from Mr. Walker that Officer Jackson had kicked him in the head, Sgt. Horan ordered Officer Jackson out of the house.  Sgt. Horan clearly did not encourage, condone or acquiesce in the use of such force.

As for supervisory liability with respect to the alleged illegal search, the claim likewise fails as a matter of law because even if Officer Jackson conducted an illegal second search, plaintiffs have not alleged that Sgt. Horan was aware that the house had been cleared prior to Officer Jackson's entrance into the apartment.  Sgt. Horan could not have acquiesced to the second search by Officer Jackson if he was unaware that it might be unlawful.

Accordingly, summary judgment with respect to Count V will be allowed.

### 3. Civil trespass (Count VIII)

Plaintiffs also assert a claim of civil trespass against Sgt. Horan.  To prevail on such a claim, they must prove 1) actual possession of the property and 2) that the defendant's entry was intentional and 3) illegal. New England Box Co., 313 Mass. at 707.  Plaintiffs contend that Sgt. Horan entered their home after Officer Jackson allegedly forced his way in to

conduct a second illegal search. Because the Court has already concluded that there is a genuine issue of material fact as to whether Officer Jackson entered into plaintiffs' apartment illegally, a reasonable juror could find Sgt. Horan liable for civil trespass when he followed Officer Jackson. Summary judgment will be denied with respect to Count VIII as asserted against Sgt. Horan.

### 4. False imprisonment (Count IX)

Plaintiffs allege that Sgt. Horan is liable for false imprisonment by intentionally confining Mrs. Walker to the living room. To sustain a claim for false imprisonment in Massachusetts, a plaintiff must demonstrate an intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement. Noel v. Town of Plymouth, Mass., 895 F. Supp. 346, 354 (D. Mass. 1995) (citations omitted).

The factual record suggests that Sgt. Horan neither had the intention to confine nor caused Mrs. Walker to be confined. The plaintiffs allege that after Mr. Walker was pushed to the ground, Mrs. Walker attempted to rush to his side but Sgt. Horan ordered her to stay in the living room and to wait for the ambulance to arrive. He allegedly placed his hand on her shoulder and asked her to stay with him. Mrs. Walker chose to stand in the doorway of the living room instead. While waiting

for the ambulance, Mr. Walker asked his wife to bring him his cell phone.  Sgt. Horan initially refused but ultimately relented and told her to come back to the living room after she gave her husband his cell phone.  Mrs. Walker returned to her earlier spot in the doorway until medical personnel arrived, whereupon she rushed to her husband's side.

The factual record suggests that the motivation behind Sgt. Horan's request that Mrs. Walker stay out of the hallway was to keep the hallway clear and to prevent any additional harm to Mr. Walker until he could receive proper medical attention.  There is no evidence to support the claim that Sgt. Horan intended to confine Mrs. Walker.

Moreover, Mrs. Walker was never confined.  Even though she was asked to stay away from her husband, she was free to move about the rest of the apartment or even to leave the house.

Accordingly, Sgt. Horan is entitled to summary judgment on Count IX.

## ORDER

For the foregoing reasons,

1) the motion for summary judgment of defendant Timothy Horan (Docket No. 127) is, with respect to Counts IV, V and IX, **ALLOWED,** but is otherwise **DENIED**; and

2) the motion for partial summary judgment of defendant Dwain Jackson (Docket No. 129) is, with respect to Count X, **ALLOWED,** but is otherwise **DENIED**.

The case remains pending against defendant Timothy Horan with respect to Count VIII and against defendant Dwain Jackson with respect to Counts I, III, VI, VII, VIII and XI of the plaintiffs' Third Amended Complaint.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 31, 2014